Peed *et al. v.* Elliott *et al.*

No. 16,258.

## PEED ET AL. *v.* ELLIOTT ET AL.

ASSIGNMENT FOR BENEFIT OF CREDITORS.—*Preference of Creditors Not Permissible in Deed of Assignment, and Void When Part of Such Transaction.*—Where a debtor, desiring to prefer one of his creditors, and to make a voluntary assignment, goes to an attorney to consult about the matter, and the attorney drafts a mortgage for the preferred creditor, which the debtor signed and acknowledged and delivered about twenty minutes before the execution of the deed of assignment, which was being prepared while the mortgage was being signed and acknowledged, all being delivered to said attorney to have recorded, who with the same purpose in view, delivered the mortgage to the recorder first and withheld the deed of assigment for about four hours and then had it recorded, the proceedings were all one and the same transaction, and the mortgage so executed could confer no more rights on the creditor than if such attempt had been made in the deed of assignment itself; and no preference can be given a creditor in a voluntary assignment.

SAME.—*Preferring Creditor.—Deed of Assignment.—Separate Transactions.*—It matters not how short a time intervenes between the conveyance or mortgage executed for the preference of creditors and the making of a deed of assignment, if it be, in fact, a separate and *bona fide* transaction; though the time may be properly considered in determining the *bona fides* of the transaction, and whether or not it was a separate one.

SAME.—*Pleading to Enjoin Sale by Trustee and Cancel Mortgage.—Sufficiency.*—Where the trustee under a deed of assignment for benefit of creditors was proceeding to sell the property subject to a mortgage, and other of the creditors seek to enjoin such sale and have the mortgage declared void, it is not necessary that the complaint aver the insolvency of the assignor.

From the Madison Circuit Court.

*M. E. Forkner, J. W. Lovett* and *S. M. Keltner,* for appellants.

*H. C. Ryan, J. C. Nelson* and *Q. A. Myers,* for appellees.

OLDS, C. J.—On the 29th day of September, 1890, James L. Peed was the owner of certain real estate in

Madison county, Indiana, also certain real estate situated in the city of Indianapolis, and certain personal property. On said date, he was indebted to his brother, John R. Peed, in the sum of $1,400 on notes given long before that time, and on account. John R. was also the security for James L. on a note to Alice Hume for $200. He was indebted to his son Martin E. Peed in a less amount than the sum due his brother. He was on said date indebted to Elliott, Schroyer & Co., the appellees, in the sum of $2,076.32, and to the appellee Louis Hollwegg in the sum of $350.16. On said date, he executed mortgages to his brother and son, securing the sums due them, his brother agreeing to take $1,000 instead of the $1,400, which sum, and the $200 he secured by the mortgage, and, also, secured the sum due his son by a mortgage; and on the same day made a voluntary assignment of all his property for the benefit of all his creditors under the statute, naming his brother John R. Peed and another as trustees. The other person named did not qualify, but John R. Peed did qualify as trustee, and was proceeding to sell the property, advertising the land for sale subject to the mortgages.

The appellees filed in the Madison Circuit Court an intervening petition, seeking to enjoin the sale of the real estate subject to the mortgages, and to have the mortgage in favor of said John R. Peed declared void, for the reason that it was executed contemporaneously with, and as a part of, the instrument of assignment.

Issues were joined by answer in denial to the petition. There was a trial by the court; and the court, on proper request, made a special finding of facts, and stated its conclusions of law in favor of the appellees. Exceptions were taken by the appellants to the conclusions of law, and certain motions were made, ruled upon, and

exceptions reserved, which rulings of the court are made the subject of review by proper assignments of error.

The principal question presented in the case relates to the validity of the mortgage in favor of John R. Peed, and this arises on the exceptions to the conclusions of law.

We deem it unnecessary to set out in detail the finding of facts, except as to the question presented on the findings in relation to the execution of the mortgages and the assignment, the court holding that they all are one transaction, having been executed contemporaneously.

The court's finding in this respect is, in brief, that on the 29th day of September, 1890, Peed went from his home in Elwood, Madison county, Indiana, to New Castle, Henry county, Indiana, where he consulted with his brother-in-law, one David W. Chambers, an attorney, in regard to his financial embarrassment, and as to the proper manner of securing his brother John R. Peed and his son Martin E., and as to making an assignment for the benefit of his general creditors; that James L. went to his brother's, John R., on that evening, remaining all night, and told his brother of his financial embarrassments, and the two went together to the office of Chambers, and again consulted him as to the best method of securing his brother and son and the making of an assignment, and was informed by Chambers that if he wished to prefer his brother and son he must first execute and deliver to them mortgages, and then execute the deed of assignment for the benefit of his general creditors, and so executed, the mortgages would be valid; that thereupon said Chambers commenced the preparation of the papers, first drawing the mortgages and notes which they were to secure, and while said debtor was acknowledging and delivering the mortgages, the said attorney was preparing the deed of assignment for the benefit of

all creditors; that when the mortgages were delivered, the deed of assignment was half written, and in twenty minutes from the time the last mortgage was acknowledged and delivered, said deed of assignment was completed, acknowledged and delivered to said Chambers to have it recorded; that each of said mortgages, and said deed of assignment, were left with said Chambers to be brought to Anderson, in Madison county, to have them recorded; that said Chambers left New Castle at ten o'clock, and at eleven o'clock he went to the recorder's office in Madison county, and had the mortgages marked recorded by the recorder of said county, having with him at the same time the deed of assignment, which he purposely withheld until two o'clock of said day, when he took it to the recorder's office and left it for record.

It is contended, on the part of the appellants, that this was a valid preference of creditors, prior to and separate and apart from the transaction of the assignment in the making and execution of the deed. While, on behalf of the appellees, it is contended that it was one and the same transaction, and was an effort to avoid the statute, by doing indirectly, through the means of the mortgages, what he could not do in the assignment itself.

The question here presented has been so recently considered by this court, and so fully considered and discussed, that we deem it necessary to say but little in addition to what was said in the case of *John Shillito Co.* v. *McConnell*, 130 Ind. 41, 26 N. E. Rep. 832, where the rule in relation to assignments and giving preference to certain creditors is properly stated.

It is well settled in this State that a debtor, even though he be insolvent, may prefer and secure a *bona fide* creditor, and, as said in the case cited, "It is enough if there is a *bona fide* preference of *bona fide* creditors, which, in fact, precedes the making of the general assignment."

But the question in this case, as in that, is whether the preference in fact precedes the assignment, for to prefer a creditor as a part of a general assignment is not permissible.

In the case cited this court said: "While it can not be said that the debtor has in fact surrendered dominion over his property until the assignment is complete, as from the purely voluntary nature of the transaction he may at any time before the final act change his mind and refuse to complete it; yet, being completed, we think it ought to be held to relate back to the time when it was actually commenced, and cover all intervening transactions. The act of making the assignment embraces the preparation and execution of the necessary instruments, and whether that takes a long or a short time, it certainly must all be treated as one continuous act. To say that the debtor's surrender of his absolute control over the disposition of his property is to be dated from the time he actually commences to make the assignment, is to give to the entire transaction the character of good faith, and make it, in fact, what it purports to be—an effort to secure to all his creditors that equal consideration contemplated by the statute. But to hold that while he is thus engaged he may at the same time successfully prefer favored creditors, is to hold that he may at one and the same time do two exactly contradictory acts," etc.

To permit a party in the same transaction to make out mortgages in favor of some creditors, and make out a general assignment in favor of remaining creditors, and give preference to the mortgagees with a view of preferring them, by purposely delivering the mortgages in advance of the recording of the assignment, would not be different in effect from preferring certain creditors in the deed of assignment itself, which is not the purpose of the statute, and can not be done.

The court, in *John Shillito Co.* v. *McConnell, supra,* holds that so long as the purposed assignment remains mere matter of intention, contemplation, or determination, the debtor has done nothing to abdicate the dominion which the law gives him over his property, though he be hopelessly insolvent; but the court says: "Certain formalities are necessary to consummate such a purpose, and we think it may fairly be said that when the debtor has once entered upon the doing of these formal acts necessary to make the assignment he can not thereafter make any valid preference if he perseveres and completes the assignment thus begun."

The rule, as stated in the case above cited, and which we have quoted, is in harmony with the other decisions of this court, many of which are cited, and the rules governing in such cases are fully and clearly stated in the case of *Gilbert, Assignee,* v. *McCorkle,* 110 Ind. 215; *Carnahan* v. *Schwab,* 127 Ind. 507.

It matters not how short a time intervenes between the conveyance or mortgage executed for the preference of creditors and the making of the deed of assignment, if it be, in fact, a separate transaction, and a *bona fide* one, though the time may be properly considered in determining as to whether or not the transaction is *bona fide* or not, and whether or not it is in fact a separate transaction.

The facts found in this case show that the debtor and the creditor, his brother, went to the office of his attorney to consult about and to make and give a preference, and make an assignment; he determines to do both at the same time. The attorney sets about drafting all the papers at the same time, to avoid the statute and avoid what the law prohibits; he signed and delivered the mortgages some twenty minutes before the execution of the assignment; they were all delivered to the attorney to

have recorded, and, with the same purpose in view, he delivers the mortgages to the recorder first, and withholds the delivery of the assignment some four hours, and then has it recorded. That it was all one and the same transaction there can be no doubt. There could be no difference, in effect, in executing them, as they were in separate papers, and gave a preference to the mortgagees in the deed of assignment; and if held valid it would be holding that the object of the law could be avoided by a mere pretext, and by merely executing two papers instead of one.

Had these papers been executed as they were in relation to any other transaction, that they would be construed together, and have the same effect as if executed together, there can be no doubt, and so construing them, the mortgage would be void, for it would be giving a preference to a creditor in a voluntary assignment, which can not be done.

The court properly concluded that the mortgage to John R. Peed was void, and did not err in its conclusions of law.

The appellants moved for a *venire de novo*, which was overruled, and which ruling is assiged as error. The contention that this ruling is erroneous, is based upon the theory that the complaint alleges that James L. Peed was insolvent, and that it is a necessary averment, and that there is no finding of this fact. This ruling was not erroneous.

The averment of insolvency was not a necessary averment in the complaint. The complaint did not proceed upon the same theory as a complaint to set aside a fraudulent conveyance. James L. Peed made a voluntary assignment under the statute, and the mortgagee, John R. Peed, was named as trustee. The validity of the mortgage was attacked upon the grounds that the mortgages

and assignment were executed contemporaneously, and constituted but one instrument, and gave to John R. Peed a preference over the other creditors, and it was therefore void, as such a preference could not be given under the voluntary assignment law. The petition was filed as an intervening petition in the insolvency proceedings. The mortgage being void, the trustee had no right to sell the land subject to it, as he had given notice to do.

There is no error in the record.

Judgment affirmed.

Filed May 23, 1893.