# Tousey v. City of Indianapolis et al.

### [No. 21,355. Filed March 7, 1911.]

1. MONOPOLIES.—*Legality of.*—The common-law rule declaring unauthorized monopolies unlawful obtains in Indiana. p. 299.

2. MUNICIPAL CORPORATIONS.—*Streets.—Paving.—Patents.—Monopolies.—Statutes.*—Under §8698 Burns 1908, Acts 1905 p. 219, §95, providing that boards of public works shall "let such contract [for paving streets] to the lowest and best bidder," and §8710 Burns 1908, Acts 1905 p. 219, §107, providing that if "there shall have been filed * * * a petition * * * in writing, of a majority in number of resident freeholders upon such street * * * sought to be improved, requesting that said street * * * be paved with any certain kind of the accepted kinds of modern city pavement, then the board * * * shall not have the power or authority to pave said street * * * with another kind of material, unless the same is specifically ordered by an ordinance passed by a two-thirds vote of the council of said city," a contract may be let, where the property owners petition therefor, for the use of a patented bitulithic pavement, where the patentees openly offer to all bidders and cities within the State the use thereof for the whole year at the reasonable rate of twenty-five cents a square yard of surface. p. 300.

3. MUNICIPAL CORPORATIONS.—*Streets.—Paving.—Kind of Material.—Statutes.*—Where a majority of the interested property owners petition for the use of a patented bitulithic pavement upon the street to be constructed, other kinds of tar or bituminous macadam paving material would not meet the requirements; and the statute (§8710 Burns 1908, Acts 1905 p. 219, §107) requires that the particular kind of paving material shall be determined when the specifications are placed on file for bids. p. 302.

From Superior Court of Marion County (75,868); *Charles T. Hanna,* Judge.

Suit by Caroline P. Tousey against the City of Indianapolis and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Morris M. Townley,* for appellant.

*F. E. Matson, James M. Head, Clarence A. Kenyon* and *Elliott & Elliott,* for appellees.

MORRIS, J.—This was a suit by appellant against the city of Indianapolis and its board of public works, to enjoin the letting of a contract for a street improvement.

The complaint alleges that on January 1, 1908, Warren Brothers Company, a corporation which owned certain letters patent issued by the United States, purporting to confer the exclusive right to mix particles of broken stone together in particular proportions, in a particular manner and by a particular method, to be used in constructing pavements, filed with the board of public works of the city of Indianapolis a written proposition, a copy of which is as follows:

" To the Board of Public Works, City of Indianapolis:

Gentlemen: Inasmuch as it is desired by many municipalities in Indiana, and by your municipality, to receive bids for the improvement of certain streets therein, with a form of pavement commonly known as the bitulithic pavement, and inasmuch as said form of pavement is covered by letters patent issued by the United States, and also patents covering the methods and processes of constructing the same, which patents have not expired, and which patents cover only the wearing surface of said pavement and the methods and processes of constructing it, and inasmuch as it is necessary in law and desired by Warren Brothers Company, which owns and controls all of said patents, that there shall be opportunity for full, competitive bidding for public work in which it is desired to receive bids for and enter into a contract to construct any public improvement in which said patented pavement and construction may enter, or become a part of said improvement: Now, therefore, the undersigned contracts and agrees that if said city shall adopt specifications and advertise for bids for said pavement said Warren Brothers Company hereby relinquishes and places at the disposal of said city full rights to use all of the patents necessary for the construction and maintenance of said pavement, either for itself or for any bidder who is desirous of bidding on said pavement, for the sum of twenty-five cents for each square yard of said pavement laid by either the city itself or by any contractor in pursuance of a contract let as aforesaid. Said price is the market price for all municipalities and bidders in the State of Indiana, and said Warren Brothers Company contracts and agrees not to revoke or withdraw

said price during the year 1908, and that said city shall have the right to use said patents for the repair and maintenance of all pavement, contracts for which may be let during the year 1908, so long as the same may be used in said city, and the acceptance of bids by your said city and the letting of the contract for the same is all that shall be necessary to bind said Warren Brothers Company to this agreement.

Respectfully submitted,

Warren Brothers Company,

Geo. C. Warren, President.

Attest: Albert C. Warren, Secretary."

The complaint further alleges that on January 10, 1908, the city, through its board of public works, adopted a preliminary resolution for the improvement, at the expense of the owners of abutting property, of a portion of Senate avenue with asphalt pavement; that afterwards a petition was filed with the board, signed by a majority of the resident freeholders affected by the improvement, requesting that it be made with " bitulithic pavement " instead of asphalt, which petition was granted, and the original resolution was so modified as to provide for the use of the bitulithic pavement; that the board adopted and placed on file complete specifications for the improvement; that said specifications provided for a pavement which shall consist of an ordinary Portland cement concrete foundation, six inches thick, upon which is to be laid a two-inch wearing surface, known as bitulithic pavement; that in said specifications it is provided as follows: " The city of Indianapolis has acquired from Warren Brothers Company all its rights to use letters patent covering the methods and processes for making, laying and constructing said bitulithic pavement for any and all work which said city may contract for, and said city hereby grants to any contractor the right to use all necessary patents for said work which he may contract for with said city, upon the condition that the contractor pay to said Warren Brothers Company, for the use of the patents, the sum of twenty-five cents a square yard for each square yard of bitulithic pave-

ment so laid, payments to be made, or satisfactorily secured, by the contractor as the work progresses. The city's contract with the Warren Brothers Company is on file at the office of the board of public works."

The specifications, under the heading "specifications for the bitulithic pavement to be laid over any approved form of foundation," describe the materials that are to compose the wearing surface, and the process of mixing and laying them in particular proportions and in a particular manner. The process described is alleged to be covered by the letters patent of Warren Brothers Company.

Appellant further alleges that she is the owner of real estate abutting on the portion of the street to be improved; that unless enjoined, the city, through its board of public works, will receive bids for the construction of the improvement according to specifications, and will award a contract therefor to the lowest and best bidder, and her property will be assessed for the improvement.

Appellant alleges that the proposed contract would be invalid and unlawful, because (1) any contractor bidding on the improvement is required to pay Warren Brothers Company twenty-five cents a square yard of construction; that said sum constitutes a part of the cost of the construction which will be assessed against abutting property; that said sum, "while conceded to be a reasonable charge for the right to use said patents, was arbitrarily fixed by said Warren Brothers Company, and agreed to or acquiesced in by said city of Indianapolis, without any competition therefor;" (2) it was unnecessary to withdraw from competition any part of the cost of construction, because said bitulithic pavement, as appears from the specifications set forth, is composed of broken stone and coal tar mixed together, as particularly described in the specifications; that such pavement belongs to a general class of pavement commonly known as "tar macadam" or "bituminous macadam" pavement, not covered by letters patent; that the "bitulithic" is a partic-

ular kind or species of the general kind of pavement known as tar or bituminous macadam; that notwithstanding the employment of said patented methods, the resulting pavement, known as bitulithic, is of the same general kind as tar, or bituminous macadam.

A demurrer was sustained to the complaint, and this ruling is the only error assigned.

Section ninety-five of the act of March 6, 1905 (Acts 1905 p. 219, §8698 Burns 1908), provides as follows: "Such board shall * * * let such contract to the lowest and best bidder." Section 107 of said act (§8710 Burns 1908) provides that "if * * * there shall have been filed * * * a petition * * * in writing, of a majority in number of resident freeholders upon such street * * * sought to be improved, requesting that said street * * * be paved with any certain kind of the accepted kinds of modern city pavement, then the board * * * shall not have the power or authority to pave said street * * * with another kind of material, unless the same is specifically ordered by an ordinance passed by a two-thirds vote of the council of said city."

In the case of *Monaghan* v. *City of Indianapolis* (1906), 37 Ind. App. 280, the court, in construing said sections, decided that a contract for a street improvement, at the expense of abutting property owners, must be let to the lowest and best bidder, whether the board in the first instance designated the kind of improvement, or afterward selected the particular kind petitioned for by a majority of the resident property owners; and that if a proposed kind of pavement is monopolized, by means of letters patent or otherwise, by a single individual or corporation, the use thereof should be enjoined, because competitive bidding would be impossible.

In *The Case of Monopolies* (1602), 11 Coke *84, it was held that a monopoly is a prejudice to all subjects, "for there are three inseparable incidents to every monopoly, viz.:

1. (a) that the price of the same commodity will be raised, (b) that the commodity will not be so good

and merchantable as before, and (c) that it tends to the impoverishment of those excluded." 27 Cyc. 891.

The common-law rule has been in noway modified in Indiana.

In the case of *American Express Co.* v. *Southern Ind. Express Co.* (1906), 167 Ind. 292, this court said: " All rules, practices, customs and usages designed to destroy competition in business, or necessarily having that effect, are inimical to the public well-being, and were condemned by the common law."

In the case of *State, ex rel.,* v. *Portland, etc., Oil Co.* (1899), 153 Ind. 483, 53 L. R. A. 413, 74 Am. St. 314, the following language was used by this court: " It is an old and familiar maxim that ' competition is the life of trade,' and whatever act destroys competition, or even relaxes it, upon the part of those who sustain relations to the public, is regarded by the law as injurious to public interests and is therefore deemed to be unlawful, on the grounds of public policy." Numerous Indiana cases are to the same effect. *Cleveland, etc., R. Co.* v. *Closser* (1890), 126 Ind. 348, 9 L. R. A. 754, 22 Am. St. 593; *Knight & Jillson Co.* v. *Miller* (1909), 172 Ind. 27; *Chicago, etc., R. Co.* v. *Southern Ind. R. Co.* (1906), 38 Ind. App. 234, and cases cited.

Monopoly is odious to our form of government, state and national. It tends to the destruction of free institutions, and is repugnant to the instincts of a free people. We approve the construction of the act of 1905, *supra,* by the Appellate Court in the case of *Monaghan* v. *City of Indianapolis, supra.*

Do the facts in this cause bring it within said rule? In the case last cited it was held on page 293 that the patentee had the "power to determine indirectly, but effectively, to whom the contract shall be awarded, by reserving to himself the right to determine arbitrarily who is equipped with the necessary appliances for laying the pavement. * * * When the patentee, although granting

the right to use the patent, reserves a right by which he may determine, arbitrarily, who shall have the contract, he has not, so far as competition among bidders is concerned, conceded anything." In this cause the proposition of Warren Brothers Company grants the right to use the patented process in the construction and maintenance of the pavement, either to the city itself or for the use of any bidder, for the sum of twenty-five cents a square yard of pavement. The proposition further states that this sum is the price fixed for all municipalities and bidders in the State of Indiana for the year 1908, and shall not be withdrawn during the year, and that the city shall have the right to use the patents for the maintenance and repair of the pavements, the contracts for which are let in the year 1908. In appellant's complaint she expressly concedes that twenty-five cents a square yard is a reasonable charge for the right to use the patents. Here, unlike in the case of *Monaghan* v. *City of Indianapolis, supra,* the patentee has no power, directly or indirectly, to control the award of the contract, for all bidders in the State are placed on equal terms, and no restriction whatever is placed on free competition for the contract. True, the sum of twenty-five cents a square yard for the use of the patented process must be added to the cost of construction, but it is conceded that the use of the process is reasonably worth the added price, and therefore appellant cannot be injured. But appellant contends that the royalty of twenty-five cents a square yard enters into the cost of construction, and that that part of the cost was not submitted to any competition whatever, and hence, in part, the cost of construction cannot be submitted to free competition. Of course, it would not be possible for competition to exist for a license to use a patented process, for the patentee under the very terms of his letters has the exclusive right to make, use and vend the thing patented. 30 Cyc. 815. Consequently, the logical result of appellant's contention would be that no patented process could, under any cir-

cumstances, be used in constructing a pavement under the provisions of this statute. Such contention cannot prevail. In the case of *Monaghan* v. *City of Indianapolis, supra,* the court expressly held that the rule there adopted did not exclude the use of a patented pavement, but did exclude the use where the patentee so held the right to use the process as to enable him to designate the contractor. There is neither reason nor authority for a rule wholly excluding the use of patented processes in constructing pavements. This particular kind of pavement may have superior qualities. The courts of Iowa have decided that it has. *Saunders* v. *City of Iowa City* (1907), 134 Iowa 132, 111 N. W. 529, 9 L. R. A. (N. S.) 392. We do not believe the use of the patented process, under the facts in this case, interferes with the competition contemplated by the statute in controversy.

The second proposition of appellant—that bitulithic pavement is a particular kind of the general kind known as tar or bituminous macadam, and that under open specifications for a bituminous macadam pavement the bitulithic can be acquired subject to proper competition—does not meet the requirements of section 107 of the act of 1905 (Acts 1905 p. 219, §8710 Burns 1908) wherein it is provided that on the filing of a petition by the requisite number of resident freeholders affected, " requesting that said street * * * be paved with any certain kind of the accepted kinds of modern city pavement," the board shall not have power to provide for the use of any other kind. The words " any certain kind of the accepted kinds " of pavement, mean one the character of which is fixed and determined beforehand, when the specifications are placed on file for bids. Plaintiff's contention would practically nullify the statutory provision which gives a valuable right to a majority of the resident property owners affected by the improvement.

Appellant cites the case of *Seibert* v. *City of Indianapolis*

(1907), 40 Ind. App. 296, in support of the contentions before enumerated. It is sufficient to say that in that case the specifications provided, among other things, that the successful bidder should pay Warren Brothers Company for the use of the patents and certain unpatented materials the sum of ninety cents a square yard of pavement. The court very properly held that the specification of a particular brand of patented material destroys competition. The ruling in that case is not applicable here.

The lower court did not err in sustaining the demurrer to the complaint. The judgment is affirmed.